237 N.J. Super. 395 (1989)
568 A.2d 94
MANUEL P. FANARJIAN AND DAVID K. MARX, JR., PLAINTIFFS-APPELLANTS,
v.
JOEL MOSKOWITZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1989.
Decided December 19, 1989.
*396 Before Judges PETRELLA, O'BRIEN and HAVEY.
Manuel P. Fanarjian argued the cause for appellants (Marx & Fanarjian, attorneys; Manuel P. Fanarjian, on the brief).
Jay A. Yanavok argued the cause for respondent (Wiener & Binder, attorneys; Larry I. Wiener and Roy H. Binder, of counsel; Jay A. Yanavok, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This tenancy appeal raises the issue of whether landlords of a commercial building have a duty to mitigate damages when a *397 tenant breaches the lease. We conclude that reason and logic dictate that the better view is that such a duty to mitigate should exist, and accordingly affirm the decision of the Special Civil Part which so held.
Plaintiffs Manuel P. Fanarjian and David K. Marx, Jr. owned a commercial building in Jefferson Township, New Jersey. Defendant Joel Moskowitz, a dentist, entered into a lease with plaintiffs for a suite in the building on May 9, 1975 for a five year initial term beginning on November 1, 1975. The lease was thereafter extended by addendum to October 31, 1988. Under the addendum, rent in the amount of $825 per month was due from November 1, 1985 through October 31, 1988. A late payment penalty of 5% of the amount due was provided in the event that the rent payment was more than 11 days late.
The lease also provided that the tenant could not assign, sublease or encumber the leasehold premises without the landlord's written consent. The annexed rider to the lease provided that such consent would not be unreasonably withheld, provided the tenant remained a party to the lease and the subsequent use was approved by the landlord.
Moskowitz advised plaintiffs by an October 23, 1987 letter that he would be vacating the suite as of November 3, 1987. After Moskowitz vacated the premises he advertised the space in the newspaper in December 1987 and January 1988 but had no success in subletting the premises. He paid the monthly rental through March 1988. On March 10, 1988 Moskowitz sent plaintiffs a check for the March rent and stated that it was the "final payment" he would make.
Plaintiffs placed a "for rent" sign in front of the building on February 28, 1988 and showed the premises on March 28, 1988 to a prospective tenant. They also spoke with two or three other interested persons and showed the premises one or two other times.
When the plaintiffs did not receive the April 1988 rent they filed the first of several complaints in the Special Civil Part. *398 This complaint sought the April rent, a late payment fee, and costs. After a hearing on May 20, 1988 the trial judge held that plaintiffs had a duty to mitigate damages, notwithstanding that commercial property was involved. The judge found that plaintiffs were not then in default in their duty to mitigate and ordered Moskowitz to pay the April rent. The judge denied the late payment claim. Neither party appealed that decision. Thereafter plaintiffs made further attempts to rent the suite. They had the outside of the building and the parking lot washed and cleaned, and mailed a proposed advertisement to the Morris County Medical Society's journal, a state chiropractic journal, the Morris County Dental Society's journal, and the Morris County Bar Association's publication. They also repainted the "for rent" sign outside the building and placed a "for rent" sign in the window of the suite.
Plaintiffs thereafter filed additional complaints for the May and June 1988 rent. The judge again held after a June 17, 1988 hearing that plaintiffs had a duty to mitigate damages and found that their efforts were reasonable to date. Consequently, Moskowitz was ordered to pay the May and June rent. However, late fees were again denied. Neither party appealed the June 17, 1988 decision.
In July 1988 plaintiffs filed a third complaint which sought the July rent and a fee for late payment.[1] As in the other cases, in accordance with R. 6:3-1 no answer was filed. The judge heard oral argument on August 5, 1988 and incorporated the testimony from the two prior hearings of May 20 and June 17, 1988. At the August 5, 1988 hearing plaintiff Fanarjian testified that he had placed some weekly and biweekly newspaper advertisements, as well as having forwarded advertisements *399 to some professional journals. He was not certain whether the advertisements had run in any of those journals. The judge ordered the July rent paid, but again denied late fees. In addition, the judge found that plaintiffs' efforts to mitigate damages were minimal. He said he was "amending the answer" to conform to the proofs and treated it as a counterclaim for declaratory relief. The judge ruled "that the obligation to continue to pay rent is terminated and it is terminated as of July, so that the defendant is excused from paying any further rent on the lease." An order was entered on September 8, 1988. It is this order which is the subject of this appeal.
Plaintiffs argue that the judge was without authority to create an answer and counterclaim for declaratory relief and enter judgment thereon. They also challenge the refusal to award payment of late charges. Finally, they argue that a commercial landlord need not mitigate damages, and in any event the conclusion that they failed to mitigate damages was against the weight of the evidence.
As to plaintiffs' challenge to the authority of the trial judge to create a counterclaim and enter declaratory judgment, they direct us to no authority which precludes the judge from ruling that defendant's obligation to make further payments under the lease has ended. We find it unnecessary to conclude whether the judge was so authorized under the Declaratory Judgments Act, N.J.S.A. 2A:16-50, et seq. In our view, the court had inherent authority, as well as authority under R. 4:9-2 and R. 4:42-6,[2] both rules are applicable to the Special *400 Civil Part under R. 6:3-1, to declare the rights and responsibilities of the parties to this lease in deciding this litigation. See 68th St. Apts., Inc. v. Lauricella, 142 N.J. Super. 546, 561 (Law Div. 1976), aff'd o.b. 150 N.J. Super. 47 (App.Div. 1977); J.B. v. G.B., 111 N.J. Super. 33 (Ch.Div. 1970). This is notwithstanding that plaintiffs chose to file their complaint in the Small Claims Section of the Special Civil Part of the Superior Court. At the August 5, 1988 proceeding defendant specifically requested dismissal of the complaint because plaintiffs had not sufficiently mitigated damages. Although this was not an express request for a counterclaim for declaratory relief, plaintiffs were fully aware of the relief defendant had requested and stated they would "submit" to a ruling. Plaintiffs certainly had notice and opportunity to object to the entry of a declaratory judgment, particularly since the issue of mitigation had been addressed at the prior two Special Civil Part proceedings. Hence, we reject plaintiffs' challenge on this ground.

I
Plaintiffs argue that the judge erred in denying late fees under the following provision of the 1981 addendum to the lease:
In the event that the payment of any of the rents as hereinabove set forth is more than 11 days late, then there shall be added thereto a late charge in a sum equal to 5% of the amount then due, which shall be added to and become payable as additional rent with the installment of rent then due.
In denying late fees at the first proceeding the judge stated that such charges would not be allowed because he did not *401 consider this a late payment situation. The proceeding on the second complaint had also resulted in a denial of late fees by the same judge.
The addendum to the lease agreement set forth a late payment penalty as an incentive for defendant to make timely rental payments. However, the trial judge was not presented with a situation concerning lack of timeliness in those payments, but an outright failure to pay rent. We agree with his decision. In our view timeliness of payment was not the issue here. The trial judge decided this issue based on the complete circumstances between the parties. We have been directed to no authority supporting plaintiffs' position. We note that in another context penalties for double rents under the Landlord and Tenant Act, N.J.S.A. 2A:42-1, et seq., have been strictly construed. See, e.g., Wagner v. Mayor, etc., City of Newark, 42 N.J. Super. 193, 210-212 (Law Div. 1956), rev'd on other grounds 24 N.J. 467 (1957); 200 Washington Street Corp. v. Beltone Hearing Service, 32 N.J. Super. 81, 83-84 (Law Div. 1954). In a similar vein Burstein v. Liberty Bell Village, Inc., 120 N.J. Super. 54, 57 (Cty.D.Ct. 1972), said that late charges were due when rent was accepted, and that since the rent was accepted, the late charges merged with the payment and were no longer due.

II
We next turn to the issue of whether commercial landlords have a duty to mitigate damages. Our Supreme Court has not ruled on this precise issue, nor has this court directly decided this issue.[3] We resolve it now in favor of a rule requiring mitigation of damages.
*402 A residential landlord has a duty to mitigate damages by making reasonable efforts to relet an apartment wrongfully vacated by a tenant. Sommer v. Kridel, 74 N.J. 446, 456-457 (1977). In Sommer v. Kridel the Supreme Court reversed long-standing law, at least as to residential leases, and held that the principles of mitigation of damages should apply. However, the Sommer Court stated: "[W]e reserve for another day the question of whether a landlord must mitigate damages in a commercial setting." Id. at 456 n. 4. Thus the Court left open the question as to mitigation in commercial lease settings.
The Law Division judge in Ringwood Assocs., Ltd. v. Jack's of Route 23, 153 N.J. Super. 294, 309 (Law Div. 1977), aff'd on other grounds 166 N.J. Super. 36, 46 (App.Div. 1979), relied on the reasons set forth in Sommer v. Kridel, supra (74 N.J. at 456), and concluded that the landlord of a commercial lease also has a duty to mitigate damages. In dictum in Ringwood Assocs., Ltd. v. Jack's of Route 23, 166 N.J. Super. at 46, we had expressed some disagreement with the trial judge's extension of a duty of mitigation of damages to commercial landlords. However, we nonetheless affirmed based on breach of the assignment clause of the contract, concluding it was unnecessary to decide the issue of a commercial landlord's duty to mitigate. Ibid.
Here, the judge on the trial of the first complaint on May 20, 1988 was persuaded by the reasoning of Carisi v. Wax, 192 N.J. Super. 536 (Cty.D.Ct. 1983), which found a duty to mitigate damages on the part of a commercial landlord. Carisi indicated that "the correct rule in this State would seem to be that in a residential leasing the parties may not by contract obviate tenant's right to have the landlord mitigate damages, but that in a commercial leasing they may so agree." Id. at 542.
Plaintiffs argue that Carisi does not correctly state the law on mitigation because commercial landlords have the option to reenter premises and relet in cases of a vacancy or abandonment. They also argue that the judge failed to consider that the law at the time the lease was made in 1975 did not require *403 mitigation and there would be no reason then for a landlord to include such a provision in the lease.
The policy of this State has long been to require mitigation in all cases involving claims for damages, whether contract,[4] see Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950), or tort, see Ostrowski v. Azzara, 111 N.J. 429, 437 (1988); Covino v. Peck, 233 N.J. Super. 612, 616 (App.Div. 1989). Stark v. National Research and Design Corp., 33 N.J. Super. 315, 323 (App.Div. 1954), involved the breach of an agreement for an assignment of the lease of business premises (as distinguished from breach of a lease, id. at 323-324), with the approval of the landlord. Thus, the case was treated as a breach of contract case. Although mitigation was required, further efforts were excused because the landlord refused to consent to any further assignment or subletting and the breaching prospective assignee was considered to have brought the situation upon itself by the default. Mitigation is also required under an oral employment contract. Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 28 (Ch.Div. 1952).
Mitigation of damages need not be specially pleaded, but is an issue where the general issue of damages is in dispute. See Becker v. Kelsey, 9 N.J. Misc. 1265, 1273 (Sup.Ct. 1931). Moreover, Rule 4:5-4 does not require that mitigation of damages be pleaded as an affirmative defense. In any event, in a change from the usual rule, Sommer v. Kridel, supra (74 N.J. at 457) noted that "while generally the breaching party has the burden of proving that damages are capable of mitigation ... here the landlord will be in a better position to demonstrate whether he exercised reasonable diligence in attempting to relet the premises." [Citations omitted].
Cases in this State have taken into account public policy considerations and, in cases involving residential leases, have imposed on a residential landlord the duty to make reasonable *404 efforts to mitigate damages. We have imposed this duty even when the residential premises are located in a state that does not impose such a duty on a landlord to mitigate damages. Carter v. Sandberg, 189 N.J. Super. 42 (Cty.D.Ct. 1983). In our view, reason and logic, as well as public policy, support the extension of the mitigation of damage requirements to commercial lease settings.[5] Such policy considerations include denying the injured party the opportunity to sit idly by and exacerbate damages; discouraging economic and physical waste; and society's interest in encouraging that vacant property be put to a practical use as soon as possible.
Other jurisdictions have found ample reason for the proposition that commercial landlords have a duty to mitigate damages. The concurring opinion in Brown v. Republicbank First Nat. Midland, 766 S.W.2d 203, 205-206 (Texas Sup.Ct. 1988), lists 18 jurisdictions which require a landlord to mitigate damages. Of these, it appears that 16 require commercial landlords to mitigate damages. The remaining two are New Jersey and New York. Hence, without reference to New Jersey, among states requiring mitigation of damages for breach of a lease, only New York requires residential landlords to mitigate damages, but does not require commercial landlords to do so. The New York cases do not set forth any policy reasons for this distinction. See Syndicate Building Corp. v. Lorber, 128 App.Div.2d 381, 512 N.Y.S.2d 674, 675 (App.Div. 1987). However, it was noted in Forty Exchange Co. v. Cohen, 125 Misc.2d *405 475, 479 N.Y.S.2d 628, 636-637 (N.Y. City Civ.Ct. 1984), a case involving a commercial lease:
... In holding that there was such a mitigation requirement, the Court in Paragon Industries, Inc. v. Williams, 122 Misc.2d 628, 629-630, 473 N.Y.S.2d 92 (Sup.Ct.App. Term 2d Dept. 1983) noted:
As the Court of Appeals ... long ago noted, the rule that a landlord may sit idly by and collect his rents while making no attempt to relet the premises often imposes harsh results.... Indeed, both courts and commentators have recognized that the contrary rule is more just (see Parkwood Realty Co. v. Marcano, 77 Misc.2d 690, 692 [353 N.Y.S.2d 623]; Ann., 21 ALR 3d 534, 540).
This holding placed New York in step with the view accepted in many other states that a landlord is required to mitigate damages. While Paragon involved a residential lease, the Court's language and analysis is not so limited that it might not be extended to commercial leases as well.
It is safe to say therefore that the old common law rule has become substantially eroded in New York and that it may not be unreasonable to expect it to be abandoned entirely when it would be again considered by the Court of Appeals.
In RepublicBank First National Midland, supra (76 S.W.2d at 206), the Texas Supreme Court discussed relevant policy reasons favoring a duty to mitigate damages with respect to termination of a commercial office space lease:
The traditional rule that a landlord has no duty to attempt to mitigate is an anachronism that is counterproductive to sound public policy. An injured party, regardless of his relationship to real property, should not be permitted to exacerbate his damages. * * * Continued adherence to the traditional rule contravenes this sound public policy in that it encourages economic and physical waste.
Likewise, the Colorado Supreme Court in Schneiker v. Gordon, 732 P.2d 603, 610 (Colo.Sup.Ct. 1987), commented on the policy reasons favoring mitigation:
... Under traditional property law principles a landlord could allow the property to remain unoccupied while still holding the abandoning tenant liable for rent. This encourages both economic and physical waste. In no other context of which we are aware is an injured party permitted to sit by idly and suffer avoidable economic loss and thereafter to visit the full economic consequences upon the party whose breach initiated the chain of events causing the loss. Furthermore, it is generally in the interests of society that property be put to practical use so far as is economically feasible.
We agree with the reasoning of these cases, as well as the reasoning in Carisi v. Wax, supra (192 N.J. Super. 536 at 538-542), that the same policy considerations which apply to *406 mandate a mitigation of damages requirement in residential leases should also apply to commercial leases. We need not decide in this appeal whether under contract principles the parties to a commercial lease can contract away the mitigation of damage requirement as suggested in Carisi, supra (192 N.J. Super. at 542) and leave that determination for a case in which the issue is squarely presented.
In view of our decision, we need not address defendant's alternative argument for upholding the judge's decision below on the basis of res judicata and collateral estoppel due to plaintiffs' failure to challenge the two prior decisions of May 20, 1988 and June 17, 1988 in which it was concluded that plaintiffs had a duty to mitigate damages. We note, however, that plaintiffs' argument under the "law of the case" doctrine does not apply because the judge's initial decision that commercial landlords have a duty to mitigate damages was not made in the proceeding which is subject to this appeal.

III
Finally, plaintiffs assert that the trial judge's decision that they failed to mitigate damages "was against the weight of the evidence." This is not the standard in a non-jury case. The proper standard is whether the judge's findings are supported by sufficient, credible evidence in the record. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974); Pioneer National Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App.Div. 1978), aff'd o.b. 78 N.J. 320 (1978).
Here, the judge made findings of fact and conclusions of law. At the August 5, 1988 hearing on the third complaint the judge took judicial notice of the past history of these disputes between the parties and the continuing efforts by plaintiffs to collect monthly rent after defendant had vacated the premises. The judge concluded that at this point efforts at reletting the premises were so minimal as to be virtually nonexistent. Even though there had been some mitigation efforts after the first *407 case had come before him, he noted that those efforts were made fairly close to the time of the decision. The judge found that there really had not been sufficient attempts toward mitigation for a substantial period of time and that late charges were not warranted. He considered the entire history of the dispute and found "virtually no action for a substantial period of time earlier in the year." He took into account the fact that there was no electricity in the premises, that the sign was minimal, that the ads placed were minimal, and that there was no indication that the ads actually appeared in any of the journals, just that they were submitted. There is sufficient basis in the record to support the judge's findings that plaintiffs failed to exercise reasonable diligence in efforts to mitigate damages. Rova Farms, supra; Pioneer National Title Ins., supra.
Affirmed.
NOTES
[1] It may be questioned whether plaintiffs, after a known breach of the entire lease, in effect an anticipatory breach as to each remaining month of the lease, should be permitted to file separate complaints for each month without violating the entire controversy rule and the mandatory joinder provisions of R. 4:27-1(b).
[2] R. 4:9-2 states in pertinent part:

When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order. Such amendment of the pleadings and pretrial order as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues.
Under R. 4:42-6 it is clear that a party is entitled to be granted the relief to which he is entitled:
Every final judgment, except final judgments by default, shall grant the relief to which the party in whose favor it is rendered is entitled even though he has not demanded such relief in his pleadings, provided the parties have been given an adequate opportunity to be heard as to the relief granted.
[3] There is a distinction in the cases between situations where there has been a breach of an agreement to enter into a lease as contrasted with situations involving the breach of a lease. See, e.g., Stark v. National Research and Design Corp., 33 N.J. Super. 315, 323 (App.Div. 1954); and discussion in 22 N.J.Practice (LeWine, Landlord and Tenant Law) §§ 91-96 (3d ed. Supp. 1989).
[4] See other cases cited in Sommer v. Kridel, supra (74 N.J. at 454 n. 3).
[5] The extension of the mitigation duty to commercial lease settings is supported by cases such as Demirci v. Burns, 124 N.J. Super. 274 (App.Div. 1973) (involving professional tenants) and Westrich v. McBride, 204 N.J. Super. 550, 554 (Law Div. 1984) which extended to certain types of commercial leases the holdings of Marini v. Ireland, 56 N.J. 130 (1970) and Berzito v. Gambino, 63 N.J. 460 (1973). See also 22 N.J. Practice (LeWine, Landlord and Tenant Law) § 403 n. 15.10 (3 ed. Supp. 1989), which notes the trend to mitigation of damages. Marini and Berzito allow residential tenants to deduct the cost of repairs on their premises from their rent or receive rebates.